# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: TRAVEL AGENT | ) | **MDL Docket No. 1561** |
| COMMISSION ANTITRUST | ) | **N.D. Ohio Case No. 1:03 CV 30000** |
| LITIGATION | ) | |
| | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| **This Document Relates To:** | ) | |
| **ALL ACTIONS** | ) | |
| | ) | |

This matter is before the Court upon Defendants' Motions to Dismiss Plaintiff's First Amended Complaint made pursuant to Rule 12(b)(6).  Oral arguments were held on October 18, 2007.

## I.  BACKGROUND

The instant case is brought by travel agents who opted out of the plaintiff class in Hall v. United Air Lines, Inc., 296 F. Supp. 2d 652 (E.D.N.C. 2003).[1]  The Court allowed

---

[1] The instant matter consists of two actions transferred to this court and coordinated for pretrial proceedings: (1) Tam Travel, Inc., et al. v. Delta Airlines, Inc., et al., filed in the U.S. District Court for the Northern District of California on April 9, 2003; and (2) Swope Travel Agency, Inc., et al. v. Orbitz, LLC, et al., filed in the U.S. District Court for the Eastern District

1

Plaintiffs in the Tam Travel action to file an Amended Complaint on September 14, 2007, in light of the recent Supreme Court decision in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007).  Defendants, in turn, filed Motions to dismiss asserting that Plaintiffs cannot meet the new pleading standard enunciated by the Court in Twombly.  Defendants Alaska Airlines, Inc. ("Alaska"), Alaska Air Group, Inc. ("AGA"), Air Tran Airlines, Inc. ("ATA"), American Airlines, Inc. ("American"), America West Airlines, Inc. ("AWA"), Continental, Airlines Inc. ("Continental"), Delta Airlines, Inc. ("Delta"), Horizon Air Industries ("Horizon"), Frontier Airlines, Inc. ("Frontier"), KLM Royal Dutch Airlines ("KLM"), Northwest Airlines, Inc. ("Northwest"), and United Airlines, Inc. ("United") filed the following eight Motions to Dismiss[2]:

> Motion to Dismiss First Amended Complaint filed by Northwest Airlines, Inc. (Dkt. #142)
>
> 12(b)(6) Motion to Dismiss Tam Travel Plaintiffs' First Amended Complaint Filed by 8 Moving Defendants (Dkt. #144)
>
> Motion to Dismiss First Amended Complaint Filed by Delta Airlines, Inc. (Dkt. #145)
>
> Motion to Dismiss the First Amended Complaint filed by Frontier Airlines (Dkt. #146)
>
> Motion to Dismiss TAM Travel Plaintiffs' First Amended Complaint filed by America West Airlines, Inc. (Dkt. #147)

---

of Texas on June 5, 2003.  On November 10, 2003, the Judicial Panel on Multidistrict Litigation transferred Tam and Swope to this District pursuant to 28 U.S.C. § 1407 so that pretrial proceedings could be coordinated or consolidated with the case Fausky, et al. v. American Airlines, et al., filed in this Court on May 8, 2003.  (Master Dkt. #1).  The Fausky case has since been dismissed.  (Fausky Dkt. #25).  Tam and Swope, however, remain before the Court.

[2] Plaintiffs dismissed US Airways, Inc. and US Airways Group on September 13, 2007 without prejudice.

2

Motion to Dismiss First Amended Complaint Filed by Alaska Airlines (Dkt. #148)

Motion to Dismiss the First Amended Complaint Filed by United Airlines, Inc. (Dkt. #150)

Motion to Dismiss the First Amended Complaint Filed by ATA Airlines (Dkt. # 166)[3]

## II.  STANDARD OF REVIEW

When presented with a motion to dismiss under Rule 12(b)(6), a court evaluates whether a plaintiff's complaint pleads a cognizable claim. <u>Gentile v. Fifth Ave. Otolaryngology, Inc.</u>, 2006 WL 2505915 (N.D. Ohio Aug. 28, 2006).  All allegations in the complaint must be taken as true and construed in a light most favorable to the nonmovant. <u>Ang v. Proctor & Gamble Co.</u>, 932 F.2d 540, 544 (6th Cir. 1991). While the court must accept a plaintiff's factual allegations as true, it "must not accept plaintiff's legal conclusions or unwarranted factual inferences as true." <u>Gentile</u>, 2006 WL 2505915, at *3 (citing <u>Lewis v. ACB Bus. Servs.</u>, 135 F.3d 389, 405-06 (6th Cir. 1998)).

A complaint alleging a conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. §1, must set forth sufficient factual allegations "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965, 1974 (2007).  To survive a motion to dismiss, the plaintiff must file "a complaint with enough factual matter (taken as true) to suggest that an agreement was made." <u>Id</u>. at 1965.  Recently, the Supreme Court addressed the

---

[3] Although Defendant ATA filed its Motion to Dismiss on November 25, 2007, after the deadline, the Court will now consider ATA's Motion because it raises the same issues as the other seven Motions to Dismiss.

3

sufficiency of pleadings of a Section 1 Sherman Act claim under a Fed. R. Civ. P. 12(b)(6) standard, holding that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 127 S. Ct. at 1974.  As such, the Court did not mandate a "heightened" pleading of specific facts, but instead held that the facts themselves must "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." <u>Id</u>. at 1965.  It is under the "plausibility standard" set out in <u>Twombly</u> that the Defendant airlines contend that the Plaintiffs' antitrust claims must be dismissed.

In <u>Twombly</u>, the plaintiffs alleged that the defendants conspired to restrain trade by inflating charges for local telephone and high-speed Internet services. <u>Id</u>. at 1962.  The plaintiffs contended that there was a lack of meaningful competition in their telephone and Internet markets because the defendants had engaged in parallel conduct to prevent competition. <u>Id</u>. at 1962-63. The plaintiffs also stated that they had a "belief" that the defendants entered into a contract, combination or conspiracy to prevent competitive entry in their markets. <u>Id</u>. at 1963.  In examining "what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act," the Court determined that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." <u>Id</u>. at

4

1965. The Court went on to hold that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy…when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceeding agreement." Id. at 1966.

In applying the plausibility standard to the complaint, the Court concurred with the district court that the complaint failed because the plaintiffs based their claims on descriptions of parallel conduct, "and not on any independent allegation of actual agreement among [the defendants]." Id. at 1970.  The Court noted that the basis of the complaint concerned the alleged parallel conduct of the defendants to keep competitors out of their markets and implied that those actions demonstrated an illegal agreement on the part of the defendants. Id. at 1970-71. The Court therefore found that the supposed agreement between the defendants to disobey the 1996 Telecommunications Act was more of a natural and "unilateral reaction" of each defendant to resist competition, and that such individual actions by the defendants did not "plausibly suggest" an agreement or conspiracy by the defendants. Id. at 1971.  Lastly, the Court emphasized that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," stating that in a complaint a plaintiff must "nudge" its § 1 claim "across the line from conceivable to plausible." Id. at 1973.

In the instant case, Defendants request that in light of Twombly, the Court now

5

determine whether Plaintiffs' Amended Complaint should be dismissed for failure to state a claim under FRCP 12(b)(6).

## III.  LAW AND ANALYSIS

The Court's construction of the Amended Complaint and Defendant's Motions to Dismiss reveals four distinct arguments: (1) Plaintiffs have failed to demonstrate parallel conduct with respect to AWA, Alaska,  AGA, Frontier, and Horizon; (2) Plaintiffs failed to allege any facts regarding KLM's participation in the alleged conspiracy; (3) Defendants Delta, United and Northwest's assertion that Plaintiff's Amended Complaint should be dismissed because they have been discharged in bankruptcy; and (4) Plaintiffs have not plead sufficient facts that "plausibly suggest" an agreement or conspiracy.  The Court will address each set of arguments in turn.

### A.    AWA, Alaska, Frontier, and Horizon

Defendants AWA, Alaska, Frontier, and Horizon[4] contend that Plaintiffs are unable to demonstrate that they acted in parallel to reduce and eliminate travel commissions between 1995 and 2002.  As stated earlier, the Court made clear in Twombly, "when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed

---

[4] Plaintiff also names Alaska Air Group ("AGA"), a holding company, as a Defendant. AGA is mentioned by name only once in the Amended Complaint.  As a holding company, Defendant AGA points out, it did not pay commissions to travel agents. (Dkt. # 148).  Therefore, Plaintiffs claims against AGA must be dismissed because there is no factual matter to plausibly suggest that AGA joined or participated in an unlawful conspiracy.  Twombly 127 S. Ct. at 1956.

6

in a context that raises a suggestion of preceding agreement, not merely parallel conduct that could just as well be independent action." Id.  While the larger airlines focus on the allegations necessary to suggest the required context for a conspiracy claim (commonly referred to as "plus factors"), Defendants AWA, Alaska, Frontier, and Horizon assert that Plaintiffs have failed to demonstrate parallel conduct because AWA, Alaska, Frontier, and Horizon did not have the same role in the reduction of travel agent commissions.

Plaintiffs allege that Defendants conspired to cap or cut the travel agent commissions on six separate occasions: 1995, 1997, 1998, 1999, 2001, and 2002.

### 1.    1995

In the Amended Complaint, Plaintiffs allege that in 1995, Delta, American, Northwest, United and Continental imposed a cap of $25 for one-way domestic tickets and $50 for round-trip domestic tickets.  (Amend. Compl. ¶ 31).  Plaintiffs do allege, however, that AWA, Alaska, Frontier, and Horizon imposed caps at this time.

### 2.    1997

Between September 18 and 25, 1997, United, American, Delta, Northwest, Continental, US Airways, the airlines reduced commissions from 10 to 8 percent.  (Amend. Compl. ¶ 34, 41).  AWA reduced commissions a few days later, on September 29th and Alaska followed suit on September 30th.  (Amend. Compl. ¶ 40).  Frontier, however, did not reduce commissions until March 2008. (Amend. Compl. ¶ 41).

7

### 3.    1998

Between November 12 and December 2, 1998, United, American, Delta, Northwest, Continental and US Airways imposed a cap on commissions on international tickets. (Amend. Compl. ¶ 43-39).  The Amended Complaint does not allege that AWA, Alaska, Frontier, and Horizon implement such a cap on international commissions at this time.

### 4.    1999

On October 7, 1999, United reduced commissions again from 8 to 5 percent. (Amend. Compl. ¶ 51).  American instituted the same reduction on October 8, with Delta and Northwest following on October 11. (Amend. Compl. ¶ 52-54).  Continental and US Airways then reduced commissions to 5 percent on October 12. (Amend. Compl. ¶ 55-56). AWA and Alaska followed suit on October 18, and Frontier implement the reduction on November 2. (Amend. Compl. ¶ 57-59).

### 5.    2001

On August 18, 2001, American capped commissions payable to travel agents on domestic flights at $10 and $20 for one-way and round-trip flights, respectively. (Amend. Compl. ¶ 61).  On August 22, United and Delta implemented an identical cap, and Northwest and US Airways followed suit the next day. (Amend. Compl. ¶ 64, 66). Contientnal and AWA announced their intention to implement the cap. (Amend. Compl. ¶ 65, 67).  Frontier and Alaska did not follow until September 4 and November 1, respectively.  submit evidence that they did not impose the commission cap until nearly

8

three weeks later. (Amend. Compl. ¶ 68, 69).

### 6.   2002

On March 14, 2002, Delta announced their intention to eliminate the travel agents' commissions completely. (Amend. Compl. ¶ 71).  On March 18, American and Continental did the same. (Amend. Compl. ¶ 72, 75).  Northwest followed the next day, and United eliminated the commissions on March 20. (Amend. Compl. ¶ 73, 74).  On March 21, US Airways and AWA followed suit. (Amend. Compl. ¶ 76, 77).  On May 31, 2002, Frontier and Alaska also eliminated commissions completely. (Amend. Compl. ¶ 78, 79).

The above named airlines allege that on the six occasions they either: (1) did not follow the commission moves of their larger competitors at all; (2) when they did implement caps or cuts similar to those implemented by larger airlines, they followed the commission moves only after periods ranging from several weeks to six months; or (3) only implemented the caps or cuts partially.

"One does not need an agreement to bring about this kind of follow-the-leader effect in a concentrated industry." Reserve Supply Corp. v. Owens Corning Fiberglas Corp., 971 F.3d 37, 53 (7th Cir. 1992); United States v. Int'l Harvester Co., 274 U.S. 693, 708-709 (1927) ("The fact that competitors may see proper, in the exercise of their own judgment, to follow the prices of another [firm] does not establish any suppression of competition or show any sinister domination.").  Plaintiffs have not put forth any "factual matter" suggesting that AWA, Alaska, Frontier, and Horizon engaged in parallel conduct because.

9

according to the Amended Complaint, the four airlines either failed to implement the caps entirely or implemented the caps after the larger airlines.  Twombly, 127 S. Ct. at 1965 ("stating a claim requires a complaint with enough factual matter (taken as true) to suggest agreement was made.").  Absent such evidence, Plaintiffs claims against AWA, Alaska, Frontier, and Horizon must fail.

### B.     KLM

KLM asserts that Plaintiffs' Amended Complaint fails to allege that KLM "reduce[d], cap[ped] and eliminate[d] commissions paid to travel agencies and travel agents" at any time.  (Amend. Compl. ¶ 32).  As KLM points out, the Amended Complaint does not allege any specific action taken by KLM.  (Dkt. #1 144).  The only appearance of KLM in the Amended Complaint, other than its identification as a Defendant, is the allegation that KLM was represented at three trade association meetings. (Amend. Compl. ¶ 97, 98, 101).  Because Plaintiffs failed to allege that KLM engaged in parallel conduct, the claims against KLM must also be dismissed.

### C.     Bankruptcy

Northwest, United, and Delta allege that Plaintiffs' Amended Complaint must be dismissed because it asserts a claim that has been discharged by the bankruptcy court. Delta, Northwest, and United point out that their reorganization plans were confirmed in

2007, 2005 and 2006, respectively.  (Dkt. # 143, 145, 150).[5]  The commission reductions

alleged by Plaintiffs, however, occurred between 1995 and March 2002.   Therefore,

Defendants assert that Plaintiffs' claims must be dismissed because they accrued in 2002,

prior to Defendants' discharge in bankruptcy.

### 1.     Public Records

Normally, when conducting a review of a 12(b)(6) motion to dismiss, the Court

cannot consider facts outside the pleadings.  In the instant case, Defendants attached to their

Motions to Dismiss, copies of orders surrounding Defendants bankruptcy petitions.  These

orders are public records from United States Bankruptcy Courts and, therefore, possess the

requisite level of reliability.   Although the Court "must only take judicial notice of facts

which are not subject to reasonable dispute," Plaintiffs refer to the bankruptcy proceedings

in the Amended Complaint.  Passa v. City of Columbus, 123 Fed. Appx. 694, 697 (6th Cir.

2005).  As a result, consideration of the attachments does not require conversion of the

motion into one for summary judgment under Rule 56.  Wyser-Pratte, 413 F.3d at 560;  see

also Palay v. United States, 349 F.3d 418, 425 n.5 (7th Cir. 2003) (a district court is entitled

---

[5] Northwest, United and Delta each petitioned for Chapter 11 bankruptcy and had their reorgnization plan approved by the bankruptcy court. On December 9, 2002, United petitioned for Chapter 11 bankruptcy.   On January 20, 2006, the bankruptcy court confirmed United's reorganization plan, which became effective February 1, 2006.  (Dkt. #150).  On September 14, 2005, Delta filed a petition for bankruptcy in United States Bankruptcy Court for the Southern District of New York.  On April 25, 2007, the Bankruptcy Court entered an order confirming the reorganization plan, effective April 30, 2007.  (Dkt. # 145).  On September 25, 2005, Northwest filed a Notice of Bankruptcy and theinstant case was stayed against Northwest pursuant to section 362 of the Bankruptcy Code, 11 U.S.C. § 362(a)(1).

to take judicial notice of matters in the public record).  Therefore, the Court may review the public records relied upon by Defendants.

### 2.    Continuing Antitrust Violation

Plaintiffs argue that even though Defendants were discharged in bankruptcy after the 2002 commission reduction, the alleged conspiracy to eliminate the travel agents' commissions was a "continuing conspiracy" because the airlines "continued to abide bye the conspiracy" after the commissions were capped in 2002.  (Dkt. # 152).

"In the context of a continuing conspiracy to violate the antitrust laws," a cause of action accrues "each time a plaintiff is injured by an act of the defendants."  Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971).  "Thus, 'even when a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act.'"  Peck v. General Motors Corp., 894 F.2d 844, 849 (6th Cir. 1990) (quoting Pace Indus., Inc. v. Three Phoenix Co., 813 F.2d 234, 237 (9th Cir. 1987)).

For purposes of claim accrual, the fact that an antitrust plaintiff may suffer continuing damages from an on-going conspiracy is irrelevant.  In the antitrust context, "the focus is on the timing of the causes of injury, i.e., the defendant's overt acts, as opposed to the effects of the overt acts."  Id.  Accordingly, accrual of an antitrust claim depends on the commission of an "injurious act" rather than "the abatable but unabated inertial consequences" of that act.  Barnosky Oils, Inc. v. Union Oil Co. of California, 665 F.2d 74,

12

81 (6th Cir.1981) (quoting Poster Exchange, Inc. v. National Screen Service Corp., 517 F.2d 117, 128 (5th Cir. 1975)).  Although continuing damages may of course be recovered, "if a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date and all provable damages that will flow in the future from the acts of the conspirators on that date." Zenith, 401 U.S. at 339.

Plaintiffs' Amended Complaint alleges that after the three airlines emerged from bankruptcy, they "had knowledge" of the alleged conspiracy, "ratified" the alleged conspiracy by failing to change its policies, and has "never taken any action to disavow" the alleged conspiracy. (Amend. Compl. ¶ 116- 118).  To give rise to a new cause of action, "an overt act must have two elements: 1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) it must inflict new and accumulating injury on the plaintiff." Martinez v. Western Ohio Health Care Corp., 872 F. Supp. 469, 472 (S.D. Ohio 1994); see also Grand Rapids Plastics, Inc. v. Lakian, 188 F.3d 401, 406 (6th Cir. 1999); DXS, Inc. v. Siemens Med. Sys., Inc. 100 F.3d 462, 467–68 (6th Cir. 1996); Pace, 813 F.2d at 238 (9th Cir.1987).  Thus, even if the airlines continued to participate in the conspiracy alleged by plaintiffs after having emerged from bankruptcy, that fact alone would not give rise to a new antitrust claim.  See, e.g., Varner v. Peterson Farms, 371 F.3d 1011, 1019 (8th Cir. 2004) (where allegedly anticompetitive conduct was pursuant to previously agreed-upon contract, conduct did not give rise to antitrust claim, which had

already accrued when contract was signed); <u>Kaw Valley Elec. Coop. Co. v. Kan. Elec. Power Coop., Inc.</u>, 872 F.2d 931, 933 (10th Cir. 1989) (continued conduct based on previously taken final decision does not create new antitrust claim); <u>Garelick v. Goerlich's, Inc.</u>, 323 F.2d 854, 856 (6th Cir. 1963) (continuation of previously initiated conduct does not give rise to a new antitrust claim); <u>Martinez</u>, 872 F. Supp. at 472 (antitrust defendant's continued adherence to a prior, allegedly unlawful decision, did not give rise to a new claim because the plaintiffs "continue to suffer the same injury that was previously inflicted upon them, albeit in an ever increasing amount").

Plaintiffs allege that Delta, Northwest, and United "conformed" their "commission levels and caps" to those of the co-conspirators when it exited from Chapter 11. (Amend. Compl. ¶ 118).  But that post-Chapter 11 "conformance" consisted solely of the airlines continuing the same commission policies that it had followed for years, both before and during its Chapter 11 proceeding.  Therefore, Plaintiffs are unable to demonstrate an overt act other than the alleged commission reduction in 2002.

### 3.      Pre-petition Debt

The formerly bankrupt Defendants assert that because Plaintiff's claim accrued in 2002, it is a pre-petition debt that cannot be brought against them.  The Bankruptcy Code clearly provides that the confirmation of a reorganization plan discharges "any debt" owed by the debtor as of the date of confirmation, unless such plan provides otherwise. 11 U.S.C. § 1141(d)(1) ("Except as otherwise provided . . . in the plan, . . .the confirmation of a plan

14

. . . discharges the debtor from any debt that arose before the date of such confirmation . . . whether or not . . . the holder of such claim has accepted the plan . . . .").

Delta, Northwest, and United's alleged liability to Plaintiffs constitutes a "debt" within the meaning of the Bankruptcy Code.  The term "debt" is defined to mean "liability on a claim." 11 U.S.C. §101(12).  The term "claim" is, in turn, broadly defined to mean a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5).  As the Supreme Court has noted, "Congress intended by this language to adopt the broadest available definition of 'claim.'" Johnson v. Home State Bank, 501 U.S. 78, 83 (1991); see also In re Jensen, 995 F.2d 925, 930 (9th Cir. 1993).  Congress adopted an all-encompassing definition of "claim" so that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." H.R. REP. NO. 95-595, at 309 (1977).  Accordingly, Plaintiffs' antitrust claims "constitute bankruptcy 'claims' within the meaning" of the Bankruptcy Code. In re Penn Central Transp. Co., 771 F.2d 762, 766 (3d Cir. 1985).

The court-approved bankruptcy plans for Delta, United, and Northwest specifically provide that all pre-petition claims against the respective airlines were discharged.  (Dkt. # 150, Ex. A to Ex. 1, discharging against United, "Claims and Causes of Action of any nature whatsoever, . . . whether known or unknown, against . . . the Debtors . . ., including without limitation . . . Causes of Action that arose before the Confirmation Date"); (Dkt.

15

# 143, the Northwest plan provides that "all holders of claims... along with their respective present or former employees, agents, officers, directors or principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan.); (Dkt. # 145, See id. ¶ 78 (Delta's plan provides that, "upon the Effective Date, all existing claims against the Debtors and Interests in the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Interests shall be precluded and enjoined from asserting against the Reorganized Debtors.")

Because the three airlines were discharged in bankruptcy proceedings, Plaintiffs are permanently enjoined from pursuing their antitrust claim against Delta, Northwest, and United. By statute, the discharge of a debt "operates as an injunction against the commencement or continuation of an action to collect [or] recover . . . any such debt." 11 U.S.C. § 524(a)(2).

### D.    Joint Motion to Dismiss

Plaintiffs attempt to meet the <u>Twombly</u> standard against the remaining Defendant airlines- Continental and United- by pointing to five separate facts that suggest a conspiracy: (1) averments of parallel conduct; (2) opportunity to conspire; (3) evidence that the actions were against Defendants' self-interest; (4) evidence that information regarding the reduction of travel agent commissions was common knowledge; and (4) industry practice.

16

### 1.      Gunn Deposition

Before proceeding to the legal analysis, it is necessary to address whether the deposition of American's executive Michael W. Gunn ("Gunn") is properly before the Court.  Plaintiff's Amended Complaint refers to portions of Gunn's testimony. (Amend. Compl. ¶ 87).  Defendants respond in their Motions to Dismiss, by referring to additional portions of Gunn's testimony that were not included in the Amended Complaint.  (Dkt. # 144).

As discussed with respect to the bankruptcy Defendants, Rule 12(b) of the Federal Rules of Civil Procedure provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."   Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings.  See 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.30[4] (3d ed. 1998).  This occurs when "a document is referred to in the complaint and is central to the plaintiff's claim . . . ."  Id.  In such event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment."  Id.; see, e.g., Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997) (considering pension plan documents that

17

defendant attached to the motion to dismiss part of the pleadings because the documents were referred to in the complaint and were central to plaintiff's claim for benefits under the plan).

In the present case, the portions of Gunn's deposition referred to in the Amended Complaint are not "matters outside the pleadings."  The deposition is referred to throughout the Amended Complaint and is central to the Plaintiffs' claims.  The Court's consideration of the policies, therefore, does not require conversion of Defendants' motions to dismiss into a motions for summary judgment.  See Weiner, 108 F.3d at 89.  Furthermore, when "a document is referred to in the complaint and is central to the plaintiff's claim," the defendant "may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment."  Id.  Therefore, the Court will also Consider Defendant's copy of Gunn's July 31, 2007 deposition attached to their motion to dismiss. (Dkt. #144, Ex. 3).

### 1.    Parallel Conduct

In the Amended Complaint, Plaintiffs added a section titled "Simultaneity and Uniformity of Commission Cuts and Caps."  Paragraph 28 states that "at a time unknown to Plaintiffs, Defendants, through their top executives and Chief Officers, agreed that they would collectively act to cap, reduce and ultimately eliminate commissions paid to travel

18

agents for the sale of airline tickets.  (Amend. Compl. ¶28).

As the Court pointed out in <u>Twombly</u>, "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."  <u>Twombly</u>, 127 S. Ct. at 1966.  There must be more than "a few stray statements [that] speak directly of agreement."  <u>Id</u>. at 1970.  For example, the plaintiffs in <u>Twombly</u> alleged that "ILECs engaged in a 'contract, combination or conspiracy' and agreed not to compete with one another."  <u>Id</u>.  The Court held that "on fair reading... [those] are merely legal conclusions."  <u>Id</u>.  Similarly, in <u>In re Elevator Antitrust Litig.</u>, the court held that, "averments of agreements made at some unidentified place and time... are insufficient to establish a plausible inference of agreement, and therefore to state a claim."

Plaintiffs' Amended Complaint alleges that Defendants took parallel actions to reduce or limit commissions paid to travel agents on six occasions, pointing to similar pricing and proximity in time as indications that Defendants conspired.  As stated earlier, <u>Twombly</u> requires more than averments of parallel conduct, and "without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief."  <u>Twombly</u>, 127 S. Ct. at 1966.  Therefore, Plaintiffs assertion of parallel conduct alone is not enough to meet the requirements under <u>Twombly</u>.  As a result, the Court will now turn to the additional factual assertions Plaintiffs offer as evidence of the conspiracy.

## 2.     Opportunities to Conspire

The Amended Complaint also includes an "Opportunities for Defendants to Combine and Conspire" Section.  Specifically, Plaintiffs allege that Defendants met frequently during the period when the cuts and caps were allegedly negotiated.  (Amend. Compl. ¶90-102).  Additionally, Plaintiffs point out that Defendants had the opportunity to conspire at private meetings (Amend. Compl. ¶92); through industry associations (Amend, Compl. ¶93, 95, 97, 98); at trade shoes (Amend. Compl. ¶96); through jointly formed business ventures (Amen. Compl. ¶99); and while playing golf (Amend. Compl. ¶102).

Proof that Defendants had an opportunity to conspire does not satisfy Plaintiff's burden of proving a price-fixing agreement, Petruzzi's IGA Supermarkets, Inc. v. Darlin-Delaware Co., 998 F.2d 1224, 124 n.15 (3rd Cir. 1993) ("Proof of opportunity to conspire, without more, will not sustain an inference that a conspiracy has taken place."); Weit v. Continental Illinois National Bank, 641 F.2d 457, 468-469 (7th Cir. 1981) (affirming directed verdict and noting that evidence that "points of contact or relationships for promotion of mutual interest existed among the defendants" did not give rise to an reasonable inference of conspiracy).  Plaintiffs assertion of an opportunity to conspire, without more, does not suggest that there was an agreement to reduce commissions.

## 3.     Against Self-Interest

In a section of the Amended Complaint titled "Commission Cuts Against

20

Defendants' Individual Self-Interest," Plaintiffs allege that "any airline unilaterally [reducing or capping travel agent commissions] would suffer a substantial loss of business when travel agents directed their customers to other airlines that had not reduced and/or capped." (Amen. Compl. ¶81).  Plaintiffs support is not grounded in fact but merely a conclusory statement that airlines would reduce or cap commissions "only if a common understanding existed." Id.  Plaintiffs only rely on United and American's failed attempt to institute commission reductions in the 1980s. (Amend. Compl. ¶ 85).  Plaintiffs also allege that:

> On July 31, 2007, Michael Gunn, former Executive Vice President of Marketing and Planning of American testified that 'industry consensus' on new commission levels was necessary for the commission cuts and caps to hold. Mr. Gunn further testified that if any other Defendant set commission rates either above or below the new level, other Defendants would be forced to rescind the cuts. Mr. Gunn further testified that he had to match commission cuts exactly or he would undercut the movement by Defendants to reduce and cap commissions.

(Amend. Compl. ¶ 87).  Defendants, however, cite a portion of Gunn's deposition transcript to counter Plaintiffs' assertion that "industry consensus" was necessary for commission cuts and caps to hold:

> Q: And that—would you agree that the most important issue was to gain the industry consensus that the commissions need to go down?
>
> A: No. I think the issue is we made a decision to cut the commissions. I hoped like heck that the competitors would follow, and to succeed they would have to follow. But that's their choice.
>
> Q: But that was the most important issue, that you had to gain industry consensus that the commissions need to go down. Otherwise, any effort by

21

you would be futile.

A: I don't think there was an issue. Maybe we are debating terminology here. It's not an issue of consensus. It's the issue of we initiated. If others followed, it would [succeed]. If they didn't, there was a likelihood it would not succeed.

Q: Consensus means to you common agreement, doesn't it? Isn't that what consensus means?

A: That sounds fair.

Q: It was, in fact, represented to you by another person at American that in order for these reductions of commissions to work that you had to get common agreement of the industry; that was the most important thing?

A: I would respond again that my belief is you have to be matched if the cut is to be [successful]. But I don't know I don't care if there's a common agreement or other. All I care about is how people behave if I do something or how I believe if they do something. To me that's not consensus. That's taking a common action after the fact which is to me a lot different than consensus. Consensus speaks to prior agreement. There certainly wasn't any prior agreement in these cases.

(Dkt. 144, Ex. 5).

To support an inference of conspiracy, "evidence of action that is against self-interest or motivated by profit must go beyond mere interdependence... [and] must be so unusual that in the absence of an advance agreement, no reasonable firm would have engaged in it."  Baby Food Antitrust Litigation, 166 F. 3d 112, 135 (3d Cir. 1999).  The Sixth Circuit has also found that actions taken against self-interest are but one of several "plus factors" in analyzing anticompetitive behavior.  See Re/Max Int'l, Inc. v. Realty One, Inc., 173 F.3d 995, 1009 (6th Cir. 1999) (setting forth factors relevant in determining whether circumstantial evidence tends to exclude independent conduct and finding that a

22

plaintiff's circumstantial evidence "must tend to exclude the possibility of independent conduct").  Gunn's deposition testimony indicates that, although each Defendant airline hoped the others would match the commissions reductions because it would be more economically beneficial, there was no agreement or conspiracy to do so.

### 4. Common Knowledge

Plaintiffs also allege that each Defendant knew that the other airlines were reducing and capping travel agent commissions because the information was common knowledge. (Amend. Compl. ¶ 27, 29, 30).  However, the Supreme Court has held that "the exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive." United States v. U.S. Gypsum Co., 438 U.S. 422, 443 n.16, 57 L. Ed. 2d 854, 98 S. Ct. 2864 (1978). Therefore, the Court does not find the availability of Defendants' commission rates for all to see as possible evidence of a conspiracy.

### 5. Industry Practice

Finally, Plaintiffs allege that a series of price fixing cases and investigations support their allegations that the airlines conspire to reduce the commissions of the travel agents. (Amend. Compl. ¶ 22-25).  For example, Plaintiffs refer to the government investigation of a conspiracy involving computer reservation systems from the "late 1980s and early 1990s." (Amend. Compl. ¶ 24).  Plaintiffs also mention a current investigation of "a) a

conspiracy to fix air-cargo rates, b) a cartel affecting fuel surcharges on passenger flights between Europe and the U.S., and c) a cartel involving surcharges on flights in Asia." (Amend. Compl. ¶ 25).

In <u>Hall v. United Airlines</u>, 296 F. Supp 2d 652, a case that also involved an alleged Sherman Act Section 1 conspiracy regarding the reduction and elimination of travel agent base commissions paid by airlines, the district court found that past instances of collusion or alleged collusion are not relevant to an instant claim of conspiracy:

> [T]here appears to be "no case law … where 'history of collusion' is used as a plus factor courts consider in cases alleging illegal collusion in an oligopolistic market.  The … 'history of collusion' in the industry does not tend to exclude the possibility that Defendants were engaged in lawful conduct during" the period relevant to the complaint.

<u>Hall</u>, 296 F. Supp. 2d 662 (citing <u>Williamson Oil Co., et al. v. Philip Morris Cos., et al.</u>, 231 F. Supp. 2d 1253, 1305 (N.D. Ga. 2002), *aff'd sub nom.* <u>Williamson Oil Co. v. Philip Morris USA</u>, 346 F.3d 1287 (11th Cir. 2003)); *aff'd* <u>Hall v. Am. Airlines, Inc.</u>, 118 Fed. Appx. 680, 683 (4th Cir. 2004).

The <u>Hall</u> court further held that "attempts to offer background of the 'anti-competitive conduct of the [airline] industry' by describing investigations by the U.S. Department of Justice and other legal action taken against the airline industry relating to various forms of alleged anti-competitive conduct" is "not only completely immaterial to plaintiff's claim, but is also arguably prejudicial and these paragraphs will be stricken from the complaint." <u>Id</u>.

24

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs have failed to meet the pleading standards enunciated in <u>Twombly</u>.  Therefore, Defendants Motions to Dismiss are **GRANTED**.  (Dkt. # 142, 144, 145, 146, 147, 148, 150, 166).  As Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted, the instant case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

      **/s/ *Peter C. Economus* – 10/29/07**
      **PETER C. ECONOMUS**
      **UNITED STATES DISTRICT JUDGE**

25